UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SONDER HOSPITALITY USA, INC., *Plaintiff* | CIVIL ACTION<br>NO.:  22-2033, c/w 22-2971 |
| VERSUS | SECTION: "O" (1) |
| 415 RUE DAUPHINE, LLC, ET AL., *Defendants* | JUDGE BRANDON S. LONG<br><br>MAGISTRATE JUDGE<br>JANIS VAN MEERVELD |

## ORDER AND REASONS

This lawsuit concerns the breach of alleged lease agreements for certain hotel properties in New Orleans by the property owners. At oral argument on defendants' Motion to Compel (Rec. Doc. 71), the Court took under submission the issue of whether defendants are entitled to lease documents for plaintiff's other properties in the area. Also pending before the Court and now fully briefed is plaintiff's Motion for Protective Order and Motion to Quash subpoenas issued to the landlords for some of those other properties for similar lease related documents. (Rec. Doc. 78). Because the Court finds the leases and amendments thereto may be relevant and that, given the damages sought, they are proportional to the needs of the case, the Motion to Compel is GRANTED as to the leases and amendments. Sonder shall produce the documents within 14 days, subject to the confidentiality provisions of the Protective Order (Rec. Doc. 36), if appropriate. Because Sonder will produce the leases, the landlords will not have to do so and the Motion for Protective Order and Motion to Quash is GRANTED.

## Background

Plaintiff Sonder Hospitality USA, Inc. is a hospitality company offering apartment style short-term and extended stay rentals. In this lawsuit, it seeks to enforce twelve Lease Agreements between Sonder and certain limited liability companies owned by Joseph A. Jaeger., Jr. (with a few

1

of the entities co-owned by a business partner). Negotiations occurred in 2020 and culminated in the execution of each of the Lease Agreements on December 31, 2020. Jaeger signed each of the Lease Agreements as Manager for the entity signing the lease. On the same date, the parties also executed a Side Letter, providing a 15 day period for the parties to make corrections to the leases and for Jaeger to obtain the approval of his business partners for the entities with co-owners. After the review period expired, the parties executed a Second Side Letter terminating the first Side Letter. This occurred on January 19, 2021. On the same date, the parties entered into an Amendment of Lease Agreement. Yet on February 21, 2021, Jaeger's attorney sent Sonder a letter purporting to terminate all the Lease Agreements. The letter did not invoke any specific default by Sonder, nor did it provide the 30 day period to cure a default provided by the Lease Agreement. The parties engaged in negotiations, but, according to Sonder, they never reached a resolution.

The defendants to this action concede that negotiations for leases took place in 2020, including a Letter of Intent ("LOI") for a group of hotels known as the "J Collection" on August 20, 2020. They say that negotiations continued even after the LOI expired at the end of October 2020. According to defendants, Sonder asked Jaeger to sign the draft leases the parties were negotiating before the end of 2020 as an accommodation to Sonder because the executed leases were necessary to support Sonder's fundraising efforts. Jaeger did so, but defendants explain that the unfinished nature of the negotiations is why the parties also executed the first Side Letter. They allege that Sonder assured Jaeger that the leases were not final. They allege that the parties continued to negotiate amendments to try and reach a final deal and that they formally terminated the signed Lease Agreements on February 12, 2021, due to delays in reaching agreements and to assure that Sonder would not claim that the leases signed as an accommodation were enforceable. They also say that in February 2022, the parties executed a binding Memorandum of

Understanding ("MOU") after a day-long meeting of the principals. They say this MOU supersedes all previous agreements of the parties.

Sonder filed suit against Jaeger and ten of the owner entities on July 1, 2022, for breach of the Lease Agreements. On August 26, 2022, it filed a separate lawsuit against St. Ann Lodging, LLC, and JAJ Ventures, LLC ("JAJ")[1]—the 75% owner of St. Ann Lodging, LLC. The two matters were consolidated on September 21, 2022. Sonder seeks over $100 million in alleged lost profits over a ten year period (the initial five year term of the leases, plus a renewal term of five years). Defendants filed a counterclaim for declaratory judgment that the leases are unenforceable and for damages for detrimental reliance, fraud, and breach of the February 2022 MOU on January 28, 2023. The consolidated cases are set for a jury trial on August 19, 2024.

The present discovery dispute concerns leases and amendments to leases[2] for other properties managed by Sonder in the New Orleans area. Defendants argue they are relevant to testing Sonder's damages model because that model is based on the theory that Sonder would have exercised the five year renewal option in the lease at issue here. They say the leases and amendments will show whether Sonder renegotiated any of these other leases due to underperformance. They submit that Sonder has a practice of renegotiating leases.

Sonder objects that these documents are irrelevant because the other properties are of a different type than the properties at issue here and the leases were entered into before the COVID pandemic under very different circumstances for the hospitality industry. Moreover, they insist that

---

[1] JAJ is also one of the owner entities named as a defendant in the first lawsuit.
[2] In discovery requests issued to Sonder, defendants seek the lease agreements for 26 other properties Sonder operates in New Orleans, including any amendments. Through the 10 subpoenas issued to owners of the other Sonder properties, defendants also seek lease related documents such as communications between the owner and Sonder regarding the modification or renegotiation of the lease and regarding demands for payment or notices of default. In opposition to Sonder's Motion for Protective Order and Motion to Quash, however, defendants say that they will withdraw the subpoenas if Sonder is ordered to produce the leases and amendments. Thus, only the leases and amendments are presently at issue.

whether and how Sonder renegotiated leases with other property owners is irrelevant to the issues in this lawsuit. Even if extrinsic evidence is permitted in aid of contract interpretation, they argue that only prior dealings between the parties would be relevant. They argue that whether Sonder renegotiated other leases is also irrelevant to the issues here because those leases contained different terms and therefore Sonder's ability to renegotiate them also differs.

Of note, the Court has already ordered production of the "underwriting documents" for at least 10 of Sonder's other properties. These documents are financial models projecting the expenses and revenues for a particular hotel that Sonder uses to decide whether to proceed with entering into a lease and operating the property. Considering the quantum of alleged damages and the fact that Sonder has experienced financial losses at the vast majority of its other New Orleans properties, the Court found these documents both relevant to Sonder's damages claims, which are based at least in part on the pre-deal underwriting documents for the properties at issue here, as well as proportional to the needs of the case.

<u>Law and Analysis</u>

1. *Scope of Discovery, Subpoenas, and Protective Orders*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." <u>Id.</u> The Rule requires consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." <u>Id.</u>

Under Rule 45, the Court may quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception of waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. Proc. 45(d)(3); see Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 817–18 (5th Cir. 2004). The moving party bears the burden of showing that compliance with the subpoena would be unduly burdensome. Wiwa, 392 F.3d at 818; Informd, LLC v. DocRX, Inc., No. MC 16-83-JJB-EWD, 2016 WL 7478962, at *3 (M.D. La. Dec. 29, 2016).

Typically, a subpoena is challenged by the party subpoenaed. 9A Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 2463.1 (3d ed.) ("Numerous cases have held that a party lacks standing to challenge a subpoena absent a showing that the objecting party has a personal right or privilege regarding the subject matter of the subpoena."). Nonetheless courts have also held that a party "has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-party subpoena." Bounds v. Capital Area Family Violence Intervention Ctr., Inc., 314 F.R.D. 214, 218–19 (M.D. La. 2016). Rule 26(c) provides that the Court "may, for good cause," protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, issuing an order "forbidding the disclosure or discovery" or "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. Proc. 26(c)(1). "The burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).

Additionally, Rule 26(b)(2) requires that the court, on motion or on its own, limit discovery (1) that is unreasonably cumulative or duplicative or can be obtained from another source that is more convenient, less burdensome, or less expensive; (2) when the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) when the discovery is outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i).

2. *Analysis*

The primary dispute between the parties is whether the leases and amendments are relevant. The Court finds that they are of at least some relevance. Sonder's business operations at other properties in the area will shed light on the viability of its damages claim, which is based on the assumption that it would have operated the properties at issue profitably. Its track record at other New Orleans properties may serve as a prediction of whether its operations would have been profitable here. That is why the Court has already ordered Sonder to produce the underwriting models for some of its other properties. The leases similarly shed light on Sonder's operational practices. The terms of the leases and amendments to the leases will provide context to the financial records (largely reflecting losses, according to the defendants) for those properties. The amendments to the leases may show that Sonder has a practice of renewing leases (as Sonder claims it would have done here) or they may show that Sonder has a practice of not doing so. They may show that Sonder has a practice of renegotiating leases, which may indicate whether Sonder was likely to do so in this case. Examples of renegotiation may also reflect that leases were performing poorly during the initial term. Sonder's operational practices and past performance may be an indication of its future practices and performance. Whether the information produced is ultimately determined to be relevant and admissible at trial is not a question now before the Court. However, the Court finds that for discovery purposes, the leases may be relevant.

6

As to proportionality, Sonder admitted at oral argument that it should not be difficult to locate and pull the leases from its files. Of course, counsel will need to review them. The burden of production is not disproportionate with the needs of this case, especially where Sonder seeks over $100 million in damages. Confidentiality is also a possible issue. Although the leases were obviously exchanged between Sonder and the applicable landlord, the parties to the lease may have intended to maintain the leases confidentially to protect trade secrets, rates, and other terms from their competitors. To the extent the leases contain confidentiality provisions or otherwise contain information that is entitled to be protected from disclosure, the Court finds that production of the leases subject to a protective order limiting their use and disclosure to this litigation (including, if appropriate, limiting disclosure to attorneys' eyes only[3]), adequately addresses any confidentiality concerns. The Court finds that production of the leases and amendments thereto by Sonder is proportionate with the needs of the case.

## Conclusion

Because the Court finds the leases and amendments thereto may be relevant and that, given the damages sought, they are proportional to the needs of the case, the Motion to Compel (Rec. Doc. 71) is GRANTED as to the leases and amendments. Sonder shall produce the documents within 14 days, subject to the confidentiality provisions of the Protective Order (Rec. Doc. 36), if appropriate. Because Sonder will produce the leases, the landlords will not be required to do and the Motion for Protective Order and Motion to Quash (Rec. Doc. 78) is GRANTED.

---

[3] The current Protective Order (Rec. Doc. 36) does not have provisions for highly confidential information. To the extent that Sonder's counsel determines that such protection would be appropriate after review of the leases, the parties should negotiate an amendment to incorporate additional limitations for highly confidential information and thereafter file a consent motion to amend the Protective Order.

7

New Orleans, Louisiana, this 14th day of May, 2024.

                                                              *Janis van Meerveld*
                                                            Janis van Meerveld
                                                    United States Magistrate Judge